**Thomas E. CREDLE, Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security Administration, Defendant–Appellee.**

No. 00–6184.

United States Court of Appeals, Second Circuit.

Feb. 14, 2001.

Carolyn A. Kubitschek; Lansner & Kubitschek, New York, NY, on the brief, for appellant.

Sarah J. Lum, Assistant United States Attorney; Loretta E. Lynch, United States Attorney, for Eastern District of New York, Varuni Nelson, Kathleen A. Mahoney, Assistant United States Attorneys, Brooklyn, NY, on the brief, for appellee.

Present JACOBS, CALABRESI and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment be AFFIRMED.

Thomas Credle appeals from the judgment of the United States District Court for the Eastern District of New York (Nickerson, J.) affirming the final decision of the Commissioner of Social Security ("Commissioner"), which granted Credle's application for disability insurance benefits ("DIB") under the Social Security Act for the period after July 1, 1995 but not before. Credle claims that he became disabled on March 5, 1992 and is entitled to disability insurance as of that date, as opposed to the later July 1, 1995 date.

 In reviewing the district court's decision to affirm the Commissioner, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000); *accord* 42 U.S.C. § 405(g); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990); *cf. Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir.2000) ("When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion."); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (same); *Schaal v. Apfel*, 134 F.3d 496, 500–01 (2d Cir.1998) (same). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry*, 209 F.3d at 122 (internal quotation marks

and citation omitted). In deciding whether substantial evidence exists, this Court defers to the agency's resolution of conflicting evidence. *See Clark v. Commissioner*, 143 F.3d 115, 118 (2d Cir.1998) ("[I]t is up to the agency, and not this court, to weigh the conflicting evidence in the record.") We agree with the district court that the record contained substantial evidence to support the Commissioner's conclusion that the date of onset for Credle's disability was July 1, 1995.

Credle made his first application for DIB on April 16, 1993. The application was denied both initially and on reconsideration. The claim was heard on the written record after Credle, without the advice of counsel, waived his right to a hearing.

On October 14, 1994, ALJ David Nisnewitz found that Credle was not disabled. Credle's request for review was denied. Credle then filed his first action in the United States District Court for the Eastern District of New York challenging the finding of the ALJ. Credle's second application for DIB was filed on February 10, 1995, while his case was pending in the district court. The Commissioner granted those benefits after a finding that Credle was disabled as of July 1, 1995. On June 26, 1996 the district court (Raggi, J.) concluded that Credle unknowingly waived his right to an administrative hearing and remanded the case for a new hearing before an ALJ. The Appeals Council vacated both decisions, unfavorable and favorable, and ordered that the two applications for benefits be considered together at a new administrative hearing. ALJ Nisnewitz held a hearing on August 6, 1997 and, on January 22, 1998, issued a decision finding that Credle was disabled as of July 1, 1995, but not prior to that date. The Appeals Council denied review of this decision and Credle brought a second action in the Eastern District of New York challenging the Commissioner's denial of benefits from March 2, 1992—his claimed onset date—to July 1, 1995. The Commissioner's decision was affirmed by the district court (Nickerson, J.) on March 30, 2000 and Credle appealed to this Court. We now affirm.

The regulations promulgated under the Act require a five-step inquiry as to whether or not an individual is disabled. These steps include: (1) whether the claimant is currently engaged in substantial gainful activity—if so, the claimant is not disabled, (2) whether the claimant has a severe impairment that limits the claimant's mental or physical ability to do basic work activities, (3) if the claimant has a severe impairment, whether the claimant has a "listed impairment" (an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1)—if so, there is an irrebuttable presumption of disability, (4) if the impairment is not "listed", whether the claimant has residual functional capacity to perform the claimant's past work, notwithstanding the claimant's severe impairment, and (5) if the claimant is unable to perform past work, whether there is other work the claimant would be able to perform. *See Shaw*, 221 F.3d at 132 (summarizing five-step analysis under 20 C.F.R. §§ 404.1520, 416.920); *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir.1998) (same).

In accordance with the regulations, the ALJ made the following findings to support the conclusion that Credle was not disabled prior to July 1, 1995:

(1) Credle last engaged in substantial gainful activity prior to March 5, 1992;

(2) Credle suffered from the following "impairments": prior to July 1, 1995, Credle suffered from low back derangement; since July 1, 1995 Credle has suffered from bulging discs at L3–4, L4–5, lumbar radiculopathy and chronic pain syndrome;

(*3*) prior to July 1, 1995, Credle's impairment was "severe" but not "listed"; since July 1, 1995, Credle has suffered from a severe impairment that is the equivalent of a "listed impairment" (Listing 1.05(c)) and has precluded him from working for at least 12 continuous months (thereby raising an irrebuttable presumption of disability since July 1, 1995);

(*4*) prior to July 1, 1995, "the claimant retained the residual functional capacity to perform the exertional demands of sedentary work, or work which is generally performed while sitting and never requires lifting in excess of ten pounds" and, prior to July 1, 1995, Credle "had no significant non-exertional limitations which narrowed the range of work he could perform"; nevertheless, prior to July 1, 1995 Credle did not have the residual functional capacity to perform his past relevant work as a foreman/attendant in a parking garage, as that work involved long periods of standing; and

(*5*) prior to July 1, 1995, based on Credle's capacity for sedentary work, age, educational background and work experience, there existed other jobs in the national economy that Credle could have performed; therefore prior to July 1, 1995 Credle was not disabled; however, since July 1, 1995, Credle has been under a disability based on the fact that his condition qualifies as a listed impairment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d) ("If you have an impairment(s) which . . . is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

In making these findings, the ALJ was required to give special weight to the medical opinion of Credle's treating physicians.

*See Shaw*, 221 F.3d at 134 (noting that under "treating physician rule" in SSA regulations the treating physician's medical opinion "is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence"). We reject Credle's assertion that the ALJ gave insufficient weight to the opinions offered by his treating physicians. The ALJ's decision reflects a thorough review of the medical record in the context of the required five-step analysis and specifically notes that "significant weight" was given to Credle's treating orthopedist, Dr. Barry Gloger, the report of the consultative examiner, Dr. K. Seo, and the testimony of the impartial medical examiner, Dr. Afalonis. We conclude that the record on which the ALJ based its findings contained substantial evidence to support the conclusion that, prior to July 1, 1995, Credle was not disabled but, through a documented worsening of his condition, became disabled after that date. There is no basis in the administrative record upon which to base a reversal of the district court's affirmation of the Commissioner's decision.

Plaintiff invokes Social Security Ruling 83–20 for the proposition that because his disability was of "traumatic origin," the correct onset date is the date of injury. SSR 83–20 provides: "For disabilities of traumatic origin, onset is the day of the injury *if* the individual is thereafter expected to die as a result or is *expected to be unable to engage in substantial gainful activity* (SGA) (or gainful activity) for a continuous period of at least 12 months." 1983–1991 Soc. Sec. Rep. Ser. 49 (1983) (internal citation omitted) (emphasis added). Credle traces the origin of his disability to an incident at work on March 5, 1992, when co-workers hit him with a metal pipe. (The record also contains evidence that Credle was in a car accident on October 19, 1991, but he returned to work

on January 20, 1992—thereby engaging in substantial gainful activity within one year from the incident—and does not identify October 19, 1991 as the relevant onset date.)

■ Even assuming plaintiff's present disability originated with the pipe incident on March 5, 1992, SSR 83–20 is inapplicable. ALJ Nisnewitz found that "[t]he work performed after the date of alleged onset of disability [March 5, 1992] does not constitute substantial gainful activity" and that "[t]here is no indication that Mr. Credle has engaged in any substantial gainful activity at any time since March 5, 1992". This finding is required by the five-step analysis to dispose of the possibility that Credle is currently engaged in substantial gainful activity and therefore not disabled. This finding does not, however, demonstrate that at the time of the injury on March 5, 1992 Credle was *expected* to be unable to engage in substantial gainful activity or gainful activity for 12 continuous months. To the contrary, the evidence in the record established that on June 26, 1992 (less than four months after the pipe accident) Dr. Gloger, one of Credle's treating physicians, reported that Credle "will [be] medically cleared to return to work as a parking attendant on Monday, July 6, 1992." Dr. Gloger reiterated that Credle could return to work in a report dated November 11, 1992. In addition, on March 5, 1993, Dr. Joseph Bottino, another treating physician, indicated on a Workers' Compensation form that Credle was not disabled and noted "no limitations—does not want to work".

Credle's *election* to avoid gainful employment after March 5, 1992 does not establish the date of injury as the appropriate onset date. The ALJ was therefore correct to use other relevant factors to determine the onset date of Credle's disability.

We have considered all of plaintiff's other arguments on appeal and find them to be without merit.

For the reasons set forth above, the judgment is hereby AFFIRMED.